EDWARD JOHNSON, SR., and BESSIE JOHNSON, Plaintiffs in Error, v. HURCK DELIVERY SERVICE, INC., and GEORGE WILLIAM TRESCH, Defendants in Error.—No. 39179.—187 S. W. (2d) 200.

Division One, April 2, 1945.

Rehearing Denied, May 1, 1945.

*Henry D. Espy* for plaintiffs in error.

*John F. Evans* for defendants in error.

 DOUGLAS, J.—Edward Johnson, Jr., aged ten, lived at 2825 Pine Street in St. Louis. Across the street from his home was a Y. M. C. A. with the usual swimming pool. It was a warm June afternoon. He was in a hurry to go swimming. He ran down the steps leading from his home to the sidewalk and stopped at the street curb waiting for an automobile going west to pass. While there he looked west and saw a truck nearly a block away coming east. When the automobile passed he ran out into the street at a point some 100 feet or more east of the intersection of Pine with Ewing Avenue. He was in the middle of the street when he again saw the truck, then in the Ewing intersection. He continued running southwardly across the eastbound traffic lane and was hit by the truck and injured. Pine Street is 36 feet wide.

Evidence in Edward's behalf showed defendant Tresch was driving the Hurck Delivery Service truck at 20 to 30 miles an hour. There were no automobiles parked in front of Edward's house and only one was parked at the north curb between the intersection and Edward's house, about 60 feet west of his house. Edward stood at the curb in front of his home to let the automobile going west pass by, then started to cross the street. No other automobile was going west at the time. The one automobile Edward had let pass had crossed the Ewing Avenue intersection at the time Edward was struck by the truck. The truck was just crossing the Ewing intersection when Edward reached the center of the street. He had gone on to a point about 6 feet from the south curb when he was hit. Immediately before the accident the truck driver was seen gazing to his right, not looking ahead. The truck did not slacken its speed before the accident.

For the defense the truck driver testified he slowed down at Ewing Avenue as he drove east on Pine. There were automobiles parked in front of the Y. M. C. A. He was driving in the center of the eastbound traffic lane of the street several feet out from the parked automobiles. The westbound traffic was so heavy it prevented him from seeing anyone on the far side or to the north of the line of automobiles. He first saw Edward when he darted out from behind one of the automobiles going west. Edward was then only 12 to 14 feet from the truck, in the middle of the street and was running south across the street. The driver put on his brakes and turned the truck toward the south curb. His truck was skidding when it hit Edward. Witnesses for the defendants testified there were several automobiles parked in front of Edward's house. The traffic going west was heavy with automobiles every 10 or 15 feet, moving in a steady stream. Edward stepped from the curb into the street between two parked automobiles, stood there waiting for a break in the westbound traffic and ran out through the line of traffic from behind one of the moving automobiles. When Edward dashed through the line of traffic the truck was in front of the Y. M. C. A. and about 10 feet from Edward. Edward was in

the center of the eastbound traffic lane when he was struck by the left front fender of the truck.

Edward's father and mother brought this action to recover the expenses of Edward's medical care and for damages for loss of his services. A previous action had been brought for Edward's injuries (Johnson v. Hurck Delivery Service, Inc., 351 Mo. 73, 171 S. W. (2d) 656). The instant case was submitted to the jury solely on the humanitarian doctrine. The verdict going against them, Edward's parents have come to this court through a writ of error.

■ The only issue under the facts was whether the driver of defendant's truck could have seen Edward in time to have avoided the accident. Plaintiffs claimed the driver could have seen Edward when he left the curb.

In view of this contention plaintiffs say defendants' instructions 5 and 6 improperly reduced the danger zone where Edward was in imminent peril and thereby postponed the commencement of the period when the driver was under a duty to look for and see Edward and to act to prevent the accident. The humanitarian doctrine requires a defendant to act only when he sees or should see a plaintiff in a position of imminent peril. Kick v. Franklin, 345 Mo. 752, 137 S. W. (2d) 512.

■ ■ The instructions were: "Instruction No. 5.

"By the term 'position of imment peril' as used in these instructions, the Court has reference to a perilous situation that is imminent and immediately impending, and which allows no time for deliberation on the part of the person in peril between its appearance and the impending collision. It does not mean a remote, uncertain or contingent danger, or one which is avoidable on the part of plaintiff. In this case, you are instructed that plaintiffs' son was not in a position of imminent peril until he reached a position where under the conditions and circumstances existing the defendant, George Tresch, in the exercise of the highest degree of care, could and should have seen plaintiffs' son and should have realized that he would not or could not stop or change his course before coming into the path of the automobile."

"Instruction No. 6.

"You are instructed that if you find and believe from the evidence that plaintiffs' ■ son ran across Pine Street from the rear of a westbound automobile and ran immediately in front of and in such close proximity to defendants' approaching truck, if you so find, that the driver thereof could not, in the exercise of the highest degree of care have avoided a collision after he saw or by exercising the highest degree of care could have seen the boy in a position of imminent peril, then your verdict must be in favor of the defendants."

Defendants, on the other hand, claimed the driver could not have seen Edward until he darted out from behind the automobile in the

line of traffic and then he was so close to the truck the driver could not avoid hitting him. Defendants' evidence supported their view of the facts. In the above instructions they submitted their view to the jury. A defendant has the same right to submit his side of the case to the jury as a plaintiff has. Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. (2d) 373; Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S. W. (2d) 562.

The extent of the danger zone where a person in imminent peril should be seen by the one causing the injury, is a question for the jury. Plaintiffs' evidence extended the zone to where Edward stepped off the curb into the street on the theory he could have been seen at that point. Defendants' evidence cut down the zone to the point where Edward appeared from behind the automobile in the westbound traffic lane almost in the center of the street on the theory he could not have been seen before he reached that point. The jury chose to believe defendants' evidence as they had the choice of doing. Defendants' instructions 5 and 6 followed their evidence and were correctly stated under such evidence. They are not subject to the criticism plaintiffs make of them.

Plaintiffs cite in support of their position the case of Burke v. Pappas, 316 Mo. 1235, 293 S. W. 142 and the cases which follow it, namely: Gray v. Columbia Terminals Co., 331 Mo. 73, 52 S. W. (2d) 809; Martin v. Fehse, 331 Mo. 861, 55 S. W. (2d) 440 and Breitschaft v. Wyatt (Mo. App.), 167 S. W. (2d) 931. However in all those cases the court found the zone of imminent peril had been improperly cut down because in each case the plaintiff could have been seen when he stepped from the sidewalk into the street and at that point was, under the circumstances of each case, in imminent peril. The cases of Iman v. Walter Freund Bread Co., 332 Mo. 461, 58 S. W. (2d) 477, Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S. W. (2d) 600 and Jones v. Chicago, R. I. & P. Ry. Co., 341 Mo. 640, 108 S. W. (2d) 94 do not hold contrary to what we have ruled above and are not apposite under the facts.

It is true, as plaintiffs point out, that the danger zone must be determined by the facts of each case. See the discussion of danger zones of various measurements in Brown v. Alton R. Co. (Mo. App.), 151 S. W. (2d) 727. Under some circumstances it might be quite wide and yet under others it might be quite narrow and not much more than the pathway of the vehicle as the jury found it to be in this case. Since there was evidence to support the jury's finding and the issues were submitted by proper instructions their verdict should not be disturbed.

The judgment is affirmed. All concur.