Forest PITT, Respondent,

v.

KANSAS CITY PUBLIC SERVICE COM-PANY, a Corporation, Appellant.

No. 43786.

Supreme Court of Missouri.

Division No. 2.

Oct. 11, 1954.

Motion for Rehearing or to Transfer to Court en Banc Denied Nov. 8, 1954.

Charles L. Carr, Frank J. Rogers, Kansas City, for appellant.

Len L. Balke, William R. Kelly, Kansas City, Will H. Hargus, C. E. Groh, Harrisonville, for respondent.

BROADDUS, Special Judge.

This is an action for damages for personal injuries and property damage. Plaintiff had a verdict and judgment in the amount of $8,181. Defendant has appealed.

The action arises out of a collision between plaintiff's automobile and defendant's streetcar which occurred at about 8:30 p. m. on June 22, 1949, in Kansas City, Missouri, on 56th Street, a short distance east of Brookside, where defendant's tracks cross 56th Street. Fifty-sixth Street runs east and west and the streetcar tracks north and south. The tracks are to the east of Brookside on a parkway. This is a private right-of-way and there are stop signs for east and west traffic on 56th Street. It was dark at the time of the accident. The street lights were on as were those of the automobile and the streetcar.

Plaintiff is a bulk station operator for the Standard Oil Company at Garden City, Missouri. On June 22, 1949, plaintiff and his daughter, Mary Jo, came to Kansas City to see plaintiff's wife, who was a patient in Menorah Hospital. They left the hospital sometime after 8 p. m. to go to the home of plaintiff's brother to spend the night. Plaintiff was driving a 1940 Buick sedan. It was raining. They proceeded south to 56th Street and turned west towards Brookside. Plaintiff knew the tracks were there and that there were stop signs at the tracks. He was driving about 15 miles an hour as he approached the tracks. He stopped at the stop sign which is 6 or 8 feet from the north bound tracks. The engine died. He started the engine and when the automobile moved forward a "little bit" he looked to the south and saw the approaching streetcar about a block and a half away and that was when his automobile stalled again. He had only

moved 6 or 8 feet. He did not see the streetcar before he started up and was between the stop sign and the tracks when he first saw it. When the automobile stalled the second time its front was over the tracks about 18 inches. Plaintiff attempted to start the engine. He was not excited because he thought the streetcar would stop. There is a shelter house on the west side of the tracks, just south of 56th Street. Plaintiff testified that when the streetcar was "quite a little ways back south of the shelter house," it appeared to be slowing down as if to make a stop, but when it got a little closer it suddenly speeded up and "came right on into the front end of my car." The automobile was stopped at that time. It was knocked to the north at an angle of about 45 degrees and came to rest against a pole. Plaintiff was thrown from the automobile.

According to the testimony of defendant's motorman, as the streetcar approached the shelter house it was traveling from 8 to 10 miles per hour. When it was about even with the shelter house its speed had slowed down to about 6 or 7 miles per hour. The motorman did not see plaintiff's automobile until after the streetcar entered the intersection, and was looking over his shoulder at the time of the impact. He stated that at a speed of 6 to 7 miles per hour, the streetcar could have been stopped within 15 to 20 feet, and at a speed of 8 to 10 miles per hour within 25 feet.

Defendant does not contend that plaintiff did not make a submissible case. Its first point is that the court erred in giving Instruction No. 2 which directed a verdict for plaintiff on a finding that "* * * the operator of defendant's streetcar failed to exercise ordinary care to keep a careful lookout for vehicles approaching and crossing the streetcar track at the time and place mentioned in evidence, if so, and was thereby negligent, if so" etc.

■ Defendant says that the instruction placed a duty on defendant's operator to keep a lookout prior to the time such duty arose. In other words, that the instruction placed such duty upon defendant when

the streetcar was south of 57th Street, or "a block and a half away" from the point of collision. Defendant cites no authority in support of its contention. Even though said instruction may be subject to the criticism leveled against it by defendant we think the error was cured by the giving at defendant's request Instruction C, which is as follows: "You are instructed that if you find and believe from the evidence that plaintiff's automobile did not stall with the front of the antomobile on defendant's north bound streetcar tracks when defendant's car was approaching 56th Street * * * you will find your verdict for the defendant." Instruction C, in effect, restricted the duty of the operator of the streetcar to keep a lookout to the time when plaintiff's automobile was stalled on the track and the streetcar was *approaching 56th Street,* not 57th Street. It had the effect of taking out of the case any duty on the part of the operator to look out for plaintiff's automobile prior to the time the streetcar passed 57th Street. Where an instruction places too broad a duty upon the defendant, the error, if any, will be cured by the giving of another instruction which confines that duty to proper legal limits. Scheipers v. Missouri Pac. R. Co., Mo.Sup., 298 S.W. 51, 55; Bales v. Kansas City Pub. Serv. Co., 328 Mo. 171, 40 S.W.2d 665.

■ Defendant also contends that this instruction is based on evidence which is in direct conflict with plaintiff's personal testimony. There can be no doubt about the rule that a plaintiff is not entitled to the benefit of evidence which is directly contrary to his own testimony. However, the rule has no application here. Plaintiff offered no evidence as to the speed of the streetcar or the distance in which it could have been stopped. It was defendant's evidence which established the fact that the operator failed to keep a lookout and that he could have stopped the streetcar in time to have avoided striking plaintiff's automobile. In discussing the principle which defendant insists that we apply to the instant case the court in Scoggins v. Miller, Mo.App., 80 S.W.2d 724, 728 said it "does not apply in the instant case for the reason

that there is no conflict between the testimony of plaintiff and defendant on all the facts in respect to the collision and consequent injury. For instance, plaintiff gave no testimony as to the speed of the car, or the distance within which it could be stopped, and defendant gave all the testimony on that subject. Hence there was no conflict on that point."

Moreover, the rule that plaintiff may not have the benefit of defendant's evidence which is in conflict with plaintiff's own testimony does not apply to plaintiff's estimates of speed, time and distances. Dennis v. Wood, 357 Mo. 886, 211 S.W.2d 470, 474 (citing many cases).

■ Defendant also says that the instruction did not hypothesize any facts for the guidance of the jury; that it was too broad and indefinite and gave the jury a roving commission. This complaint is answered adversely to defendant by the case of Fortner v. St. Louis Public Serv. Co., Mo.Sup., 244 S.W.2d 10, 14, 15, where this court said: "In a primary negligence case it should be sufficient if a jury is authorized to find that a defendant was negligent specifically in failing to keep a proper lookout (or as in the instant case, more specifically, if the jury is authorized to find that defendant was negligent in starting a streetcar without exercising 'ordinary care to keep a reasonable lookout ahead'), and that such negligence directly caused plaintiff's injuries." (Citing cases.)

Defendant next contends that Instruction No. 1 given on plaintiff's behalf and covering the humanitarian doctrine permitted a recovery by plaintiff on facts in direct conflict with his own testimony. Defendant's brief quotes from the instruction as follows: "then your verdict must be for the plaintiff, Forest Pitt, and against the defendant, Kansas City Public Service Company, even though you may also find and believe from the evidence that the plaintiff was or may have been himself careless and negligent in getting into and being in a position of imminent peril, if he was, on said occasion."

Defendant then says: "Under plaintiff's factual theory, based on his own personal testimony, he could not have been negligent in getting into a position of peril on defendant's tracks." Defendant stresses plaintiff's testimony that he approached the stop sign at about 15 miles per hour, stopped, and looked to the south, but did not see the streetcar; that he started slowly and looked again when between the stop sign and the tracks and saw the streetcar "about a block and a half away"; that his automobile stalled at that time or immediately thereafter with its front end over the tracks about 18 inches and remained motionless until the collision; that he kept trying to start his car; that he thought the streetcar would stop, as it appeared to be slowing as it approached, but when it was almost to the shelter house it speeded up and came on into collision with the automobile.

However, other portions of plaintiff's testimony tended to show that he was negligent in getting into a position of imminent peril. Prior to the time his automobile stalled on the streetcar track the motor of the car had not been working properly. "It had been sitting out in this rain and it was more or less damp. It wasn't running very good." The motor had died when plaintiff stopped at the stop sign. Knowing this, plaintiff started the motor and drove onto the track. Moreover, the jury could have found that plaintiff was guilty of negligence in remaining in his automobile after it had stalled on the track.

■ But, in any event, no harm was done defendant. This for the reason that under the humanitarian doctrine "it is of no consequence what brings about or continues the situation" of the plaintiff's peril. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484.

■ Defendant also contends that this instruction broadens the position of imminent peril and places a duty on defendant to act before plaintiff was in imminent peril. The effect of defendant's argument is that the instruction should have required the

jury to find the specific time when and the specific place where plaintiff's position of imminent peril arose. That part of the instruction which deals with the position of imminent peril is as follows: "The Court instructs the jury that if you find and believe from the evidence that prior to the collision mentioned in evidence plaintiff Forest Pitt and the automobile he was driving entered into a position of imminent peril of colliding with the north bound streetcar mentioned in evidence, if so, and if you further find that the operator of defendant's streetcar saw or by the exercise of ordinary care could have seen that the plaintiff and his said automobile were in a position of imminent peril of colliding with said streetcar * * *."

It is to be noted that the instruction does not use the words "entering into" or "approaching" or any equivalent of such words with reference to the position of imminent peril. It requires the jury to find that plaintiff and his automobile were in a position of imminent peril prior to the collision. No specific time or place where the position of imminent peril arose is hypothesized in the instruction. In that respect the instruction is like the humanitarian instructions in Perkins v. Terminal Railroad Ass'n, 340 Mo. 868, 102 S.W.2d 915, 920, and Wofford v. St. Louis Public Serv. Co., Mo.Sup., 252 S.W.2d 529, 533, in which cases main instructions were approved against attacks similar to the one made by defendant in the instant case. In the Wofford case, supra, this court said: "It would have been manifest error for the instruction to have advised the jury when plaintiff came into peril. *When* plaintiff came into peril was a fact question for the jury." And the place where the position of imminent peril arises under the humanitarian doctrine is a question of fact for the jury under the evidence. Perkins case, supra, and Johnson v. Hurck Delivery Service, Inc., 353 Mo. 1207, 187 S.W.2d 200, 202. Defendant's contention lacks merit.

The last assignment is that the verdict is excessive. As stated, plaintiff was awarded $8,181 for personal injuries and damages to his automobile. Plaintiff's evidence showed the damages to the automobile to be $800, which leaves $7,381 awarded for personal injuries.

At the time of the trial plaintiff was 53 years of age. Prior to the collision he had been in good health. At the time of the accident plaintiff was thrown from the automobile to the street. He received a severe bruise on his forehead and soon thereafter suffered from pain in his head and back, pains through his lower bowels and a nervous stomach. At the time of the trial he was still suffering from loss of memory, frequent headaches and dizziness, impairment of appetite, irritability and nervousness, pains in his back and loss of weight.

The physician at Garden City who treated plaintiff died prior to the trial. Plaintiff was examined by an orthopedic surgeon two days before the trial. This doctor testified that upon examination of plaintiff he found that plaintiff's hands shook; that he suffered from eye discomfort on reading; that the normal forward curve of the lower back was not present; that there were marked muscle spasms; that there was tenderness in the lower spine, indicating back injury; that there was limitation in movement of the spine and pain in bending forward or backward; that there was a limitation in the raising of the legs by reason of back pains; and that there was brain injury as evidenced by tests. In the doctor's opinion the conditions which he found upon examination of plaintiff were caused by the accident and were permanent. Defendant offered no evidence as to plaintiff's injuries.

■ There is no precise formula for gauging whether a verdict is excessive. Each case must be considered upon its particular facts. Consideration is given the nature and extent of the injuries and losses, diminished earning capacity, changing economic factors and the compensation awarded and approved in cases of similar or fairly comparable injuries. The nature, extent and permanency of the injuries are the paramount factors and the ultimate test of excessiveness or of inadequacy of award is what will fairly and reasonably compensate the plaintiff for his injuries. Brown v.

Payne, Mo.Sup., 264 S.W.2d 341. In determining the question we review the evidence from the standpoint most favorable to plaintiff. When considered in that light it is apparent that we would not be justified in interfering with the jury's award, approved by an able trial judge on motion for new trial.

The judgment is affirmed.

LEEDY, Acting P. J., and ANDERSON, Special Judge, concur.