**Thomas M. TOOLEN and Emily Toolen, Appellants,**

**v.**

**Herman Andrew KUTZ, Appellee.**

**No. 72–1396.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1973.

Decided July 27, 1973.

Rehearing Denied Aug. 20, 1973.

---

Vincent M. Igoe, St. Louis, Mo., for appellants.

Robert C. Ely, St. Louis, Mo., for appellee.

Before LAY and BRIGHT, Circuit Judges, and NICHOL,* District Judge.

NICHOL, District Judge.

The parents of Kevin Toolen brought suit in the Circuit Court of St. Louis County for the death of their son pursuant to the Missouri wrongful death statute. V.A.M.S. 537.080. Thereafter, the defendant removed the case to the United States District Court for the Eastern District of Missouri. The case was tried and submitted to the jury on the basis of the Missouri Humanitarian Doctrine. From an adverse verdict and denial of a new trial the plaintiffs appeal.

Briefly, the evidence received at trial, viewed in the light most favorable to the jury verdict, shows that fifteen year old Kevin Toolen was struck and killed on December 10, 1971, at approximately 11:00 p. m., when he was hit by a 1971 Lincoln Continental driven by the defendant, Herman Andrew Kutz. Kevin and his companion, Edward Sahs, were walking home from a church dance, and their route brought them to the three eastbound lanes of Interstate 270 near its intersection with Old Halls Ferry Road, St. Louis County, Missouri, where the accident occurred. The defendant was driving east at a speed of sixty to sixty-five miles per hour in the far left lane adjacent to the grass median. The weather was clear and dry, and there were no obstructions to Kutz's vision. At some point beyond the above intersection's overpass the defendant testified that his attention was attracted to the two boys, approximately two hundred feet ahead, "jumping about" in the lane immediately to his right. Other, conflicting testimony at trial placed the defendant's first awareness of the boys at a position on the shoulder of the highway, just prior to their dash across the Interstate. The defendant recalls releasing the accelerator and, then, slamming on his brakes and skidding into the decedent who had entered the defendant's driving lane.

Plaintiffs list four points to be raised on appeal. Of the four points so listed they have failed to brief or argue three; consequently, they will be deemed abandoned by this court. The fourth point charges that the trial court erred in instructing the jury as follows:

> You are instructed that Kevin Toolen was not in a position of immediate danger until he began running toward the path of defendant's automobile and defendant was under no duty to slacken his speed until then.

It is the plaintiffs-appellants' position that the question of where the area of immediate danger commences under the Missouri Humanitarian Doctrine is one of fact for the jury, that the District Court erred in partially defining that area, and that this instruction is prejudicial in that it "does not impose a duty upon Defendant to exercise the highest degree of care once (Defendant) *could have known* of the danger of Kevin Toolen."

The defendant-appellee argues that the instruction is not in error because it does not tell the jury the place where the imminent peril arose nor where it commenced, "but merely informs the jury that imminent peril could not have come into existence at anytime prior to a certain point in the chain of events."

The sole issue for resolution is whether it was prejudicial error for the trial court to instruct as quoted above in a case tried and submitted to the jury on the Missouri Humanitarian Doctrine. We find that it was error to so instruct and reverse and remand for a new trial.

* Chief Judge, District of South Dakota, sitting by designation.

This issue has been confronted in the Missouri State Courts within factual contexts involving car-pedestrian, train-car, and train-pedestrian collisions. The rule expressed in those cases is that the point where the zone of immediate danger commences in cases invoking the Missouri Humanitarian Doctrine is one for the jury under the facts and circumstances of the case. Sperry v. Tracy Dodge-Plymouth Company, 344 S.W.2d 108 (Mo.1961); Perry v. Dever, 303 S.W.2d 1 (Mo.1957); Pitt v. Kansas City Public Service Company, 272 S.W.2d 193 (Mo.1954); Wofford v. St. Louis Public Service Co., 252 S.W.2d 529 (Mo.1952); Johnson v. Hurck Delivery Service, Inc., 353 Mo. 1207, 187 S.W.2d 200 (1945); Brown v. Alton, 236 Mo.App. 26, 151 S.W.2d 727 (1941); Perkins v. Terminal R. Ass'n of St. Louis, 340 Mo. 868, 102 S.W.2d 915 (1937); Womack v. Missouri R. Co., 337 Mo. 1160, 88 S.W.2d 368 (1935). This rule has been followed by this court in several cases. Rudloff v. Johnson, 267 F.2d 708 (8th Cir. 1959); Illinois Terminal R. Co. v. Creek, 207 F.2d 475 (8th Cir. 1953); Herron v. Wilson, 186 F.2d 72 (8th Cir. 1950).

In factual circumstances such as these the Missouri courts place upon a defendant automobile driver the duty to exercise the highest degree of care to discover the dangerous position into which a careless plaintiff has placed himself. The imposition of this duty was effectively precluded by instructing the jury that the area of immediate danger did not commence until the boys began running toward the path of the oncoming Lincoln. The trial court's instruction prohibited the jury from finding, under the conflicting evidence, that the boys were in immediate danger in their position on the shoulder of the Interstate Highway at night. The appellants' evidence, through the testimony of Patrolman Terry Boaz, attributed the defendant-appellee with having seen the boys on the highway's south shoulder prior to the accident. Thus the District Court's instruction foreclosed the jury from establishing that the boys were in an area of immediate danger when they were seen standing on the shoulder bordering the superhighway, and, consequently, the highest degree of care was not imposed until they began the ill-fated dash across the Interstate.

It was manifest error for the instructions to have advised the jury *when* Kevin came into peril. *When* Kevin came into peril was a fact question for the jury. Wofford v. St. Louis Public Service Co., *supra*, at 252 S.W.2d 533.

Reversed and remanded for a new trial.