William ADAIR, James Adair, Julia Young, Joe Adair, Martha Tyler, Kathryn Fairchild and Shirley Treasure, Respondents,

v.

N. W. ELECTRIC POWER COOPERATIVE, INC., a Corporation, Appellant, (Minnie Adair, Co-Respondent).

No. 22961.

Kansas City Court of Appeals.

Missouri.

Nov. 2, 1959.

Russell N. Pickett, Eugene E. Andereck, Phil Hauck, Pickett, Andereck & Hauck, Trenton, C. P. Junge, Cole Camp, for appellant.

Delton L. Houtchens, Clinton, William Neff, Warsaw, for respondents.

William J. Cason, Clinton, for Minnie Adair, co-respondent.

MAUGHMER, Commissioner.

Plaintiffs had judgment against the defendant Power Cooperative in the sum of $3,497.83 as damages for trespass committed in the construction and maintenance of an electric transmission line across plaintiffs' 290 acre farm located in Henry County, Missouri. The judgment vested in defendant a permanent easement across said lands. This easement right-of-way is some 3,400 feet long, covers approximately eight acres, and extends across the entire farm.

A statement of facts will serve to both explain the situation and introduce the issues presented by this appeal. There was a pre-trial conference. As a result the parties admitted, stipulated and agreed: (1) That fee simple title to the farm in question was in James W. Adair on May 9, 1948, the date of his death; (2) that Minnie Adair, his widow and the third party defendant, upon his death was seized of the right of dower therein—one-third for life; that she was born May 8, 1884, and the value of her life estate or dower should be computed under and in accordance with the provisions of Sections 442.530, 442.540 and 442.550, V.A.M.S.; (3) that on June 23, 1952, the said Minnie Adair executed a document entitled "Transmission Line Easement", which purported to grant to defendant an easement across said lands, and that she received a consideration of $244 at the time. In this document grantor warranted her title and covenanted to defend it; (4) defendant constructed the transmission line during May, 1953; (5) on June 7, 1956, Minnie Adair, third party defendant, in the Circuit Court of Henry County, Missouri, recovered judgment against defendant in the sum of $300. The amount of this judgment covered pole allowance as provided in the easement deed and damages allegedly done to some of her crops during the construction; (6) that each of the plaintiffs at the time of the death of James W. Adair and at the time of trial owned a one-seventh interest in said farm, subject to the dower interest of Minnie Adair.

At the time Minnie Adair conveyed the easement to defendant it seems no abstract of title for the farm was in existence or was readily available. It is apparent and all parties tacitly agree that both Mrs. Adair and the defendant company, and for that matter plaintiffs, believed that Mrs. Adair was absolute owner of the land as survivor of an estate by the entirety. Learning that such was not the fact plaintiffs, heirs at law and owners of the real estate, instituted the present suit. Defendant's defense as pleaded was three pronged. It declared first that Mrs. Adair was acting as plaintiffs' agent when she conveyed the easement to defendant and, therefore, plaintiffs were precluded from a recovery. Secondarily, it was claimed that she thereby perpetrated a fraud upon the defendant. Probably these defenses could not be satisfactorily established. In any event neither has been urged on this appeal. Defendant asserts further that the final judgment, involving the easement deed, by the Henry County Circuit Court, makes all issues concerning the validity of such deed res judicata, which coupled with the absolute conveyance therein with warranty, results in making Mrs. Adair, grantor, liable to it for any damages plaintiffs might recover in the instant suit.

Mrs. Adair was joined as a third party defendant. She asserted the easement conveyance was the result of mutual mistake and sought equitable reformation thereof by the court.

The trial court sat as chancellor insofar as the equitable issues were involved. A

jury was utilized to determine if plaintiffs were entitled to recover and if so, to assess the damages to the 290 acre farm which resulted from defendant's easement and power line construction. Sitting as a court of equity, the trial court decreed that the easement deed from Mrs. Adair to the defendant company, purporting to convey a complete easement and in which she warranted her title was the result of a mutual mistake; that the amount she received therefor was far less than the actual value of the full easement, partially rescinded the deed and reformed the same so as to convey only the interest actually owned by Mrs. Adair. The verdict of the jury was for plaintiffs and for Mrs. Adair, third party defendant, against defendant company, and assessed damages at the sum of $4,000. The court computed the share of the widow therein as provided by the statutes and as agreed to under the pre-trial stipulation, which value was $502.17. This amount was deducted from the total of the jury verdict and judgment was entered for plaintiffs and against defendant for the amount remaining; that is, $3,497.83. The judgment also specifically confirmed defendant's easement.

The appellant Power Company makes three assignments of error: First, that it was allowed not three, but only two peremptory challenges of jurors. Second, that the court erred in reforming the easement deed and, third, that improper, prejudicial and erroneous argument was made to the jury by counsel for the third party defendant.

Appellant takes the position that the court had no power to reform Mrs. Adair's easement deed and bottoms such assertion upon the allegation that her stated grounds for rescission and reformation had been previously adjudicated in the Henry County suit.

The two basic reasons for such rescission and reformation as asserted by Mrs. Adair and as found by the trial court were first, mutual mistake as to her title and,

second, grossly inadequate consideration. The matters of pole allowance and construction damages were the only issues litigated in the Henry County suit.

█ It is well settled that a former judgment is a bar not only as to all matters which were raised, but also as to all defenses which could be raised. State ex rel. Metropolitan Life Ins. Co. v. Hughes, 347 Mo. 549, 148 S.W.2d 576; Gibbany v. Walker, 233 Mo.App. 489, 121 S.W.2d .317. However, the equitable issues determined by the court in our particular case were not pleaded, presented, considered, adjudicated or known about by either court, counsel or by the parties in the Henry County case. Neither side at that time even knew that Mrs. Adair's title was less than complete.

█ It is our opinion the court had the right to consider rescission and reformation of the easement deed. There was ample evidence to support the finding that such deed was the result of mutual mistake— both Mrs. Adair and defendant believed at the time of its execution and at the time of the Henry County judgment that her title was complete. True, she was lax in guaranteeing her absolute title without definitely knowing the extent of that title. That she, an elderly widow and little experienced in business affairs, did so is less surprising and shocking though than that defendant company with its right-of-way agents, business men and lawyers, accepted it. Based upon the total value of the easement secured by the defendant, as fixed by the jury, the $544 received by Mrs. Adair was grossly inadequate for full and complete title. This fact is especially important in our case because if the deed is to be rescinded and reformed, the parties must be returned substantially at least, to their status quo position. Actual return to status quo cannot be accomplished here as the transmission line is already built. If Mrs. Adair were held liable under her warrant of the easement and its value became fixed at $4,000, then the Power Com-

pany would receive a $4,000 easement value at a cost of only $544, and Mrs. Adair would suffer a cash loss of $3,456 as a sort of penalty for having done business with defendant. On the other hand, if Mrs. Adair were paid full value for the easement—$4,000 or whatever its full value is finally determined to be—and the company were required to pay some $3,500 in addition to plaintiffs, then the company would be paying almost double, and Mrs. Adair would be allowed to retain a sum far in excess of the reasonable value of her interest.

Based upon the jury valuation of $4,000, the value of Mrs. Adair's dower interest was $502.17. She has been paid $544 by the company, but a part of this payment—and we don't know exactly how much—was for damages to her growing crops, fences, etc. which occurred at the time the line was built. We are satisfied that based upon the presently existing valuation of the easement, the judgment, as entered, returns the parties substantially, at least, to their status quo position. If the valuation of the whole easement upon retrial should be determined to be a substantially different amount, such finding should be considered by the chancellor in determining Mrs. Adair's equitable rights so that both she and the defendant company may be placed in a position of substantial status quo.

Section 494.200, V.A.M.S. provides: "In trials of civil causes each party shall be entitled to challenge, peremptorily, three jurors; but when there are several plaintiffs and defendants they shall join in their challenges, and the plaintiff shall, in all cases, announce his challenges first".

The transcript shows that defendant company exercised two of the three peremptory challenges authorized for a defendant. The company and Mrs. Adair, third party defendant, were unable to agree upon the third challenge. The company wanted to strike juror Bird. Mrs. Adair wanted to strike juror Durham. The matter was submitted to the court. Appellant says the interests of it and Mrs. Adair were adverse, that her interest was parallel to that of plaintiffs and that it should not be required to share the defendant's peremptory challenges with her. The court allowed the third party defendant to challenge juror Durham and thereby reduced defendant's challenges to two.

■■ There is no inherent right to peremptory challenges of jurors. Whatever right the litigant has to such challenges flows from the statutes. Counsel have pointed out that Kentucky has legislated on this matter by statute, granting to each party litigant the right of peremptory challenge to three jurors (Sec. 29.290 KRS). However, our statute squarely provides: "Where there are several plaintiffs and defendants they shall join in their challenges". In White v. Teague, 353 Mo. 247, 182 S.W.2d 288, 291, the several defendants reported to the court that they could not agree on the challenges to be made. The court directed the clerk to call the first twelve names on the list as the jury. Our Supreme Court approved such procedure. The same court in Clark v. St. Louis & S. Ry. Co., 234 Mo. 396, 137 S.W. 583, 588, used the following language in discussing this question: "The second question of practice presented by counsel for appellant challenges the correctness of the ruling of the trial court in refusing the railway's claim of right to a peremptory challenge of three jurors. The railway company before the trial commenced demanded of the court that a panel of 21 jurors be presented, so that each of the defendants might be allowed three peremptory challenges. This request was denied by the court, and appellant duly excepted. In support of this contention, counsel for appellant cite section 3783, Rev.St.1899, and the case of Doyle v. Railway Co., 103 Mo.App. 19, 77 S.W. 471. Said section reads as follows: 'In trials of civil causes each party shall be entitled to challenge, peremptorily, three jurors; but when there are several plaintiffs and de-

fendants they shall join in their challenges, and the plaintiff shall, in all cases, announce his challenges first.' This section of the statute, instead of authorizing each of the defendants to make three challenges, expressly provides that, where there are two or more plaintiffs or defendants, they shall join in their challenges; that is, the plaintiffs or defendants in such cases have jointly the right to make three challenges, and not that each has the right to three".

Apparently in our case appellant exercised two peremptory challenges. The third party defendant offered no objection to these two challenges and might be said to have thereby joined therein. The court allowed the third party defendant to make the third challenge. There is no affirmative showing that defendant was prejudiced through the presence of juror Bird on the jury instead of juror Durham. The two defendants being unable to agree upon the third challenge, the court, under the ruling in White v. Teague, supra, could properly have ordered the first twelve names appearing on the list to be called as a jury. We shall not hold that the action taken was either improper under the prevailing circumstances or amounted to prejudicial error.

The court properly instructed the jury that the measure of damages was the difference between the fair market value immediately before and immediately after the appropriation. During the argument to the jury by counsel for third party defendant, the ensuing statements were made:

"Forget about it being forever, just think about the next 30 years, which would be some ten thousand days. If you were a farmer and owned that piece of land, would you have this stuff on there for a dollar a day? You have got to have something to go on, I know that. It's hard to fix the value and the loss of market value, and that is the test you have got to apply, but a man has to have a mental process in doing it. If you owned that farm, that stock farm, and they were going to come

out—and you can rely on your own common judgment and your own common experience in every day life—and they was going to come out and put that thing on there, and you owned this stock farm, would it be worth a dollar a day to you for it not to be there?

"Mr. Andereck: Just a moment, please. I am sorry to interrupt. Your Honor, I object to that line of argument because the test, as the Judge just told we lawyers and this jury, is the reasonable market value before as compared to after, and the argument isn't proper.

"Mr. Cason: Judge, I told them—

"The Court: Objection will be overruled. Of course, confine it as much as you can to the evidence and reasonable inferences.

"Mr. Cason: Ladies and gentlemen, it is the difference in market value before and after, and I think I just told you that myself, but I say you have got to have some basis in your mind of getting that, you can't just pick it out of the air. And I say to you a reasonable thought process on the thing could be would you have that thing on there, if that was your stock farm, would you be willing to pay less for it, would you have it on there for a dollar a day.

"Mr. Andereck: Same objection, Your Honor.

"The Court: Overruled.

"Mr. Cason: I don't think any one of you would".

In our opinion this argument was not based upon the evidence, stated an incorrect measure of damages and was contrary to the instructions on the question. Twice the court overruled the objection and counsel made the same argument three times. The objections—each of them—should have been sustained.

Respondent has invited our attention to Collins v. Cowger, Mo., 283 S.W.2d 554,

as authority for the proposition that even though the argument was improper, nevertheless, the appellate court "should be satisfied from a full examination of the record that the asserted prejudicial argument was so prejudicial, inflammatory and outside the record as to affect the result on the merits." We have no quarrel with this general statement as to the law, but the Supreme Court in this cited case (at pages 560, 561) said: "The field of argument is a broad one, but the law does not contemplate that counsel in argument may go beyond the issues or the record and urge prejudicial matters, or urge a theory of claim or defense which the law does not justify or which conflicts with the trial court's instructions submitting the issues of a case".

We think the argument complained of (1) Went beyond the record. (2) Urged a theory of claim which the law does not justify and which conflicted with the court's instructions.

In addition, the argument as made and as approved by the court invited the jury to use a mathematical formula in arriving at a result and suggested that the jurors put themselves in plaintiffs' place as owners of the farm. If a juror does actually "put himself in plaintiff's shoes" he would be no fairer judge than plaintiff himself would be and it is fundamental that no man should judge his own case. Plaintiffs were entitled to recover the difference between the value of their farm immediately before and immediately after the taking—not a payment in advance of so much per day for 30 years "for having it on there".

The mathematical formula for measurement of damages for pain and suffering is interestingly reviewed, fully discussed, analyzed and condemned by the Supreme Court in the recent case of Faught v. Washam, 329 S.W.2d 588. In that case the court points out that if an argument of this character is permissible and proper, it would be just as logical and equally as fair to permit expert witnesses to evaluate pain and suffering on a per diem or per hour basis.

Section 512.160, subd. 2, V.A.M.S. provides: "No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action". We have considered this provision and have read the cases cited by respondent where the appellate court found the argument was improper, but refused to remand by holding such argument did not materially affect the merits. In some of these cases there was not a proper or timely objection. In others, there was comment on failure to produce certain witnesses, and in still others there were vindictive personal attacks upon the adversary—both litigant and counsel.

The ultimate objective is to hold trials that are fair. The proper and legal rule for measuring damages in this type of case has been judicially declared many times. The trial court instructed the jury accordingly. The evidence was confined within such limitations. Then this argument broke through and over and outside of legal and proper barriers and adversary objections were denied and overruled. The argument as made was not based upon any evidence. It suggested an illegal, improper and incorrect measure of damages and was definitely contrary to the court's instructions. We believe and hold it was improper, unjustified and when considered in the light of the court's refusal to sustain the objections thereto, amounted to prejudicial and reversible error.

The judgment is therefore reversed and the cause remanded for a new trial.

SPERRY, C., not participating.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court. All concur.