James STUART, Plaintiff/Respondent,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Defendant/Appellant.

No. WD 36306.

Missouri Court of Appeals,
Western District.

Aug. 6, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Oct. 1, 1985.

Application to Transfer Denied
Nov. 21, 1985.

Edward W. Mullen, Russell C. Ashley (argued), Kansas City, for defendant/appellant.

Timothy W. Monsees (argued), James C. Morrow, Kansas City, for plaintiff/respondent.

Before NUGENT, P.J., and PRITCHARD and CLARK, JJ.

NUGENT, Presiding Judge.

Defendant State Farm Mutual Automobile Insurance Company appeals from a judgment in James Stuart's favor. Plaintiff sued the defendant, his insurer, on the uninsured motor vehicle provisions of his insurance policies. The company complains that the evidence was insufficient to support submission of the case to the jury, that the court erred in the admission of expert testimony and in giving the damage instruction, that plaintiff's closing argument was improper, and that the court erred in permitting juror misconduct. We affirm.

In July of 1978, Mr. Stuart, a resident of Missouri, and his family were en-route to Southern Arkansas. As he was driving through a convenience store parking lot near Hot Springs, Arkansas, a car driven by the then Rebecca Jo Taylor struck plaintiff's car. Mr. Stuart testified that he got out of his car, went over to Ms. Taylor's vehicle and spoke with her. Over defendant's objection, he further testified that she told him that the accident was her fault,

that the car was owned by her husband, and that she did not have insurance but that her husband worked in a body shop and would repair his car free of charge. After the accident was reported to the police, the Stuarts completed their family trip. Plaintiff claims that in the collision he incurred a neck fracture that caused him to suffer headaches and insomnia.

At the time of the accident, plaintiff had six insurance policies with the defendant each of which provided him uninsured motor vehicle coverage.

At a later time not specified in the record, plaintiff and his wife drove back to Hot Springs to find Ms. Taylor. They first inquired of the Garland County Sheriff, but his files revealed no record of the other driver. A driver's license check was also fruitless. Without success, they called all the Taylors listed in the local telephone book and all the local body shops trying to find Ms. Taylor or her husband.

Plaintiff's attorney also tried to find the elusive Ms. Taylor. In 1979, he wrote to the Garland County Sheriff requesting a copy of the accident report. The sheriff's office responded that they could not find the report. A similar written request was made to the Arkansas state police, but they also found no record of the report. Plaintiff's attorney next wrote to Ms. Taylor at a Hot Springs address provided by defendant in its response to plaintiff's interrogatory. No answer came and the letter was not returned.

In 1980, plaintiff's attorney once again wrote the sheriff and provided him with additional information on Ms. Taylor, but the sheriff was still unable to find the missing accident report. Next, the attorney wrote the Arkansas Department of Motor Vehicles seeking Ms. Taylor's driving record. The office refused to provide the request without written authorization from Ms. Taylor. Finally, in 1984, plaintiff's attorney wrote the Hot Springs' postmaster requesting her address, again without success.

Three days before trial, defendant supplemented its interrogatory answer with an address for Ms. Taylor in Arlington, Texas. The supplemental response did not state that Ms. Taylor had remarried and was now Rebecca Jo Hamilton. Plaintiff did not talk with Ms. Taylor prior to her testimony at trial.

She testified that she had not been contacted by defendants until three days before the trial and that she had only lived at the Arlington address for a few weeks. She also testified that she had lived with her stepmother in 1979 at the Hot Springs address and that her stepmother continued to live there until 1983. She further testified that defendant had contacted her stepmother at some time before it contacted her, but she did not know exactly when that occurred. After leaving Hot Springs in 1979, Ms. Taylor had lived in the State of Washington and in Canada, and she had briefly returned to Hot Springs before moving to Texas in 1983. She stated that after she moved from Arkansas in 1979 her stepmother knew where she was.

Finally, Ms. Taylor testified that she did not have insurance at the time of the accident, that the vehicle was owned by her former husband and that she did not know whether he had had insurance at that time. She also stated that he had worked at the time in the body shop of a local Pontiac dealer. She denied that she told Mr. Stuart that the accident was her fault.

At trial, plaintiff presented expert medical testimony as to the future consequences of his injury. Orthopedic surgeon Dr. Richard Curnow treated Mr. Stuart after the accident. His deposition testimony was read into evidence at trial. He testified that one of Mr. Stuart's vertebrae had slipped forward narrowing the canal through which the spinal cord passes. In his first examination of Mr., Stuart, he found his condition to be abnormal but stable and decided to prescribe no treatment or medication. The doctor saw him again two months later and Mr. Stuart complained of headaches. Nine months later Mr. Stuart still complained of persistent headaches. The doctor stated that at the time he "felt" that the headaches were caused by chronic strain or a degenerative arthritic changes. Plaintiff's attorney asked the doctor for his opinion to a reasonable medical certainty on Mr. Stuart's chances for recovery if the symptoms persisted absent treatment. The doctor answered that if the symptoms continued surgery would be the only treatment that would give him a chance to recover. The doctor then described the operation that would be used, a cervical neck fusion. Defendant objected to the preceding testimony as speculative.

Plaintiff's counsel then asked Dr. Curnow whether, if Mr. Stuart was not treated, he would be susceptible to any special dangers. The doctor answered that he is more susceptible to paralysis from a repeat trauma such as a car accident or even a hard sneeze when his head was turned the wrong way. This danger resulted from his neck not being as stable as the normal neck. The doctor further testified that he did not have any doubt that Mr. Stuart would suffer future degenerative arthritic changes. Defendant objected to that testimony as speculative.

Dr. Raymon DyRagos, an orthopedic surgeon and neurosurgeon, also treated Mr. Stuart and testified for plaintiff at trial. Plaintiff asked the doctor for his opinion to a reasonable degree of medical certainty of Mr. Stuart's prognosis absent treatment. He answered that he would probably sustain accelerated development of traumatic osteoarthritis. Defendant objected and plaintiff asked the doctor if the condition could be expected to develop. The doctor answered that the chances were fifty-fifty. Defendant renewed its objection and it was overruled. The plaintiff then asked what future treatment would be needed. Defendant's objection was overruled. The doctor described the same operation that Dr. Curnow had mentioned, a cervical neck fusion. Next he was asked whether in his opinion to a reasonable degree of medical certainty Mr. Stuart would need the operation. He answered that he could not really

tell unless he saw Mr. Stuart and that he had not seen him for "ages." Defendant did not object at that point or ask that the doctor's testimony be stricken.

Plaintiff's counsel in his opening statement and in his closing arguments referred to defendant as "the insurance company" or "this insurance company." In his opening statement he told the jury that they probably had a right to bring a lawsuit against their insurance company as had plaintiff. Defendant objected and plaintiff's attorney responded that he would confine himself to arguing the evidence. The court did not rule on defendant's objection. The defendant did not ask for any additional relief. Also, in his opening statement, plaintiff's attorney in describing a medical procedure stated that "They cut open your neck...." Defendant's objection was sustained. In his summation, plaintiff's attorney argued that defendant was trying to "jerk" his client around. The court sustained defense counsel's objection. Plaintiff's attorney also stated in his summation that defendant was "blowing some smoke your way." At trial, defendant did not object to the latter argument.

Using MAI 4.11, the court instructed the jury on damages as follows:

> If you find in favor of plaintiff, then you must determine the total amount of plaintiff's damages to be such sum as you believe he sustained and is reasonably certain to sustain in the future as a direct result of the collision mentioned in the evidence.

The court omitted the following language from the approved instruction: "will fairly and justly compensate plaintiff for any damages."

The jury returned a verdict in plaintiff's favor. After the trial, defendant discovered that juror Esther Butkovich in response to defense counsel's voir dire question had not revealed that she was a plaintiff in a pending lawsuit in associate circuit court. She did mention on voir dire another lawsuit in which she had been involved and had been concluded prior to trial.

Defendant moved for a new trial based, in part, on Ms. Butkovich's alleged misconduct. A hearing was conducted on the motion and Ms. Butkovich testified. The Butkovich lawsuit arose from a 1976 automobile accident involving her husband. Ms. Butkovich was not a passenger in the car. The other driver could not be found. Ms. Butkovich asked for $500 for loss of consortium and her husband prayed for $4,500.

She testified that she did not recall the accident or lawsuit during voir dire, and that she did not remember it until it was brought to her attention after trial. She stated that her husband filed the suit, that he asked their attorney to handle the matter and that she assumed that the matter was concluded since she had heard nothing for quite some time. She testified that her husband did not discuss the matter with her, that she had not seen the damage to the car, but she was aware that he had been treated for injuries received as a result of the accident. She went on to state that her husband often went to the doctor for matters not related to the accident. She also stated that her husband did not keep her informed as to his activities.

At the conclusion of the hearing, the judge stated that he was inclined to believe that Ms. Butkovich did not recall the accident and resulting lawsuit. The only factor that made him doubt her testimony was the husband's being treated by a physician. He said that he would discount that factor if the treatments had been administered right after the accident. The medical records concerning that treatment were not available at the time of the hearing, but defense counsel stated that they would be filed when they became available. Our record does not reveal whether those documents were filed. They are not included in the record, but defendant's motion was overruled.

Defendant raises a number of points on appeal. They are briefly: First, the court erred in submitting the case to the jury because the evidence was insufficient to show that Ms. Taylor was driving an unin-

sured motor vehicle. Second, the court erred in admitting irrelevant evidence of plaintiff's efforts to find Ms. Taylor. Third, the court erroneously admitted hearsay testimony. Defendant's fourth point is that the court allowed speculative testimony by plaintiff's medical experts. Fifth, defendant complains of plaintiff's opening statements and closing arguments and of juror misconduct. Finally, the defendant complains of the instruction on damages read to the jury.

### I.

Defendant's first point is that the evidence was not sufficient to submit to the jury the issue whether Ms. Taylor was driving an uninsured motor vehicle.

■ The trial court may direct a verdict in defendant's favor only where the evidence and the inferences drawn from it are so strongly against the plaintiff that no room remains for reasonable minds to differ on the disposition of the case in defendant's favor. *Martin v. Brune*, 631 S.W.2d 77, 79–80 (Mo.App.1982). To determine that issue, we consider the evidence in the light most favorable to the plaintiff, according him all reasonable inferences and disregarding defendant's evidence except as it may aid plaintiff's case. *Id.; Dudley v. Dumont*, 526 S.W.2d 839, 843 (Mo.App. 1975).

Each of plaintiff's six policies includes this clause:

> To pay all sums which the *insured* or the legal representative of such *insured* shall be legally entitled to recover as damages from the owner or operator of an *uninsured motor vehicle* because of *bodily injury* sustained by the *insured,* caused by accident and arising out of the ownership, maintenance or use of such *uninsured motor vehicle.*

The policies define uninsured motor vehicle as "a land motor vehicle not insured or bonded for bodily injury liability at the time of the accident."

■ The plaintiff in an action under the uninsured motor vehicle clause has the burden to show that the other driver was operating an uninsured motor vehicle at the time of the occurrence. *Oates v. Safeco Insurance Co.*, 583 S.W.2d 713, 715 (Mo.1979) (en banc); *Miles v. State Farm Mutual Automobile Insurance Co.*, 519 S.W.2d 378, 379 (Mo.App.1975), cited with approval in *Harrison v. MFA Mutual Insurance Co.*, 607 S.W.2d 137, 140 (Mo.1980) (en banc). Ms. Hamilton testified at trial that she was not insured at the time of the collision, that the vehicle was owned by her former husband and that she did not know whether he was insured. Over defendant's objection, plaintiff introduced hearsay to the same effect. Even if it had been properly admitted, however, a question mooted by Ms. Hamilton's testimony at trial, it adds nothing to the plaintiff's case. Such evidence alone did not make a prima facie case that Ms. Taylor was driving an uninsured motor vehicle. It only proved that she herself was not insured.

That evidence, however, was not the only evidence plaintiff presented on the issue. He also presented evidence, as we have already set forth in detail, of his and his attorney's unsuccessful efforts to find the then Ms. Taylor and to determine whether the car she drove was indeed insured.

Ms. Hamilton was not found until three days before trial. Defendant supplemented its interrogatory answer and supplied plaintiff with her new address. But defendant did not inform plaintiff that she had remarried and changed her name. Plaintiff had no contact with her until she testified at trial. She also testified that she would not have wanted to talk with plaintiff before trial.

■ Defendant argues that evidence of plaintiff's fruitless searches is irrelevant. We disagree. The applicable rule is that where substantial evidence shows that plaintiff has made all reasonable efforts to determine the existence or not of insurance and those efforts have been fruitless and the defendant offers no affirmative proof that the insurance coverage existed, then the issue whether or not the vehicle was uninsured may be submitted to the trier of

fact and it may draw the inference that the vehicle was not insured. *See State Farm Mutual Automobile Insurance Co. v. Matlock*, 462 S.W.2d 277, 278–79 (Tex.1970); *Signal Insurance Co. v. Walden*, 10 Wash. App. 350, 517 P.2d 611, 613 (1973); *Abraham v. Great American Insurance Co.*, 21 Ohio Misc. 170, 256 N.E.2d 265, 267 (1969). Just as with all other issues of liability, to make a submissible case on this issue, plaintiff must show by substantial evidence, that he has made all reasonable efforts to determine whether or not the other vehicle was insured. *See Gibson v. Newhouse*, 402 S.W.2d 324, 327–28 (Mo. 1966). The question of the substantiality of plaintiff's evidence is one of law to be determined by the court. *Id.* at 328.

Missouri courts have not had occasion to make use of this well-recognized rule, but its application to these facts furthers the public policy of Missouri's uninsured motorist statute, § 379.203.[1] The purpose of that section is to give the same protection to a person injured by an uninsured motor vehicle that he would have had had he been injured by an insured vehicle. *Webb v. State Farm Mutual Automobile Insurance Co.*, 479 S.W.2d 148, 151 (Mo.App. 1972). The rule prevents a plaintiff from losing the protection afforded by the statute and by his contract of insurance because he had the difficult and sometimes impossible burden of proving a negative: the lack of insurance.

The facts of this case illustrate the soundness of the rule. The plaintiff attempted to locate a non-Missouri driver. The accident report could not be found in the files of either the Arkansas state police or the Garland County Sheriff. The other driver, who was driving her husband's vehicle, moved from Arkansas soon after the occurrence and then lived in Canada and in the States of Washington and Texas. She was the plaintiff's only real means to discover whether the vehicle was insured and she was living in areas far from Missouri. She testified at trial that she did not want to talk with plaintiff before trial. The let-

ter plaintiff sent to the address where she was living in 1979 was not answered or returned. The insurance company, according to Ms. Hamilton, was in touch with her stepmother at some unspecified time before it contacted her. After she left Arkansas in 1979, her stepmother knew where Ms. Hamilton was living. Since Ms. Hamilton did not want to talk to plaintiff, the defendant had the better chance to find her and, therefore, to find her former husband and to learn whether or not the car was insured.

Without the rule in question, an occasional insured motor vehicle owner, conscious of what a reported accident can do to his liability insurance rates, may well be tempted to frustrate the public policy of this state by simply making himself scarce after an accident. Likewise, an occasional insurer may also do nothing in its investigations to find or disclose the truth regarding the coverage maintained by such missing motor vehicle owners. Of course, in this case State Farm and its attorneys appear not to have acted improperly.

■ Defendant also argues that this issue is controlled by Arkansas law, the place of the occurrence. But burden of proof is a matter of procedure and the law of the forum applies. *Neve v. Reliance Insurance Co. of Philadelphia*, 357 S.W.2d 247, 250 (Mo.App.1962).

### II.

■ Defendant complains that the court erred in allowing plaintiff's expert witness to testify as to speculative future consequences of plaintiff's injury. The rule is that an expert witness can only testify as to the future consequences of an injury if they are reasonably certain to occur. *Hahn v. McDowell*, 349 S.W.2d 479, 482 (Mo.App.1961); *See also Thienes v. Harlin Fruit Co.*, 499 S.W.2d 223, 229–30 (Mo.App.1973). Consequences which are contingent, speculative or merely possible are not to be considered by the jury in determining damages. *Id.*

---

1. All sectional references are to Revised Statutes of Missouri, 1978.

Dr. Curnow testified to a reasonable medical certainty that plaintiff would need a cervical neck fusion if his symptoms persisted. He also testified that he did not have any doubt that Mr. Stuart would suffer future degenerative arthritic changes. That testimony was clearly admissible.

Dr. DyRagos testified as to a fifty-fifty chance that Mr. Stuart would develop accelerated traumatic osteoarthritis, a degenerative arthritic condition. If we assume that such testimony was not as to consequences reasonably certain to occur, it would be inadmissible and should have been stricken. The court's failure to strike it does not require reversal, however, because Dr. Curnow had already testified to a medical certainty that Mr. Stuart would suffer a degenerative arthritic condition. Defendant was not prejudiced by Dr. DyRagos' testimony. If anything, it actually aided defendant in that it lessened the weight of Dr. Curnow's testimony.

Dr. DyRagos was also asked to a reasonable medical certainty whether Mr. Stuart would require surgery. Defendant's objection was overruled. He then stated that possibly plaintiff would require surgery. Defendant did not renew his objection. Plaintiff's attorney then asked whether to a reasonable medical certainty Mr. Stuart would need the operation. The doctor answered that he could not tell without seeing Mr. Stuart again. Defendant did not renew his objection and request that the doctor's testimony be stricken.

That testimony did not meet the required standard of a reasonable medical certainty, but defendant did not object or renew its objection when the doctor did not testify with the required certainty. The defendant, therefore, waived its objection. Rule 84.13. But even if the error was preserved, it would not require a reversal. Dr. Curnow had already testified that Mr. Stuart would need the operation. Dr. DyRagos' testimony did not prejudice defendant because his uncertainty lessened the weight to be given to Dr. Curnow's admissible testimony.

Dr. Curnow also testified that, if Mr. Stuart's condition was not treated, he would be susceptible to paralysis by a repeat trauma. Defendant argues that the testimony was speculative. The doctor did not testify that he would actually suffer paralysis. He described only the dangers that plaintiff's existing condition posed to him without treatment. The fact that the danger exists is not speculative. Therefore, the testimony was admissible. Defendant also complains that Dr. Curnow was asked a hypothetical question not supported by the evidence. The question embraced the essential evidence on the matter and the question was properly asked.

### III.

Defendant's next point is that the court erred in not granting it a new trial because juror Butkovich failed to reveal that she was involved in a similar lawsuit thereby denying defendant the right to trial by an impartial jury. Ms. Butkovich claimed that she did not remember that she was a plaintiff in the pending lawsuit. The judge stated that he was inclined to believe her testimony. The only factor that called her testimony in doubt was the fact that her husband had seen a doctor fourteen or fifteen times as a result of the accident. The judge further stated that if the visits had occurred soon after the accident he would be inclined to believe Ms. Butkovich in spite of her husband's treatment. The records of her husband's visits were apparently filed after the hearing, but they do not appear in the record. We conclude that, since the court denied the motion, the records showed that Mr. Butkovich was treated soon after the accident.

Whether or not Ms. Butkovich had forgotten about the lawsuit was a matter for the court to determine. See, Rinkenbaugh v. Chicago, Rock Island and Pacific Railroad Co., 446 S.W.2d 623, 626 (Mo.1969). The court decided to believe her testimony. Since the record provides a logical basis for that decision, we will not disturb the court's determination. See, Id. at 627.

The accident from which the suit arose occurred in 1976. Ms. Butkovich's claim was for only $500 for loss of consortium.

She was not a passenger in an automobile in the collision, and she testified that her husband filed the suit. She also stated that her husband often went to the doctor and that she was not involved in her husband's affairs. Apparently, nothing has happened in the action because the other driver is missing. The court could reasonably believe that Ms. Butkovich forgot about the matter.

## IV.

 Defendant next complains of plaintiff's counsel's opening statement and closing argument. As we have previously detailed, much of the offensive argument was not objected to. Moreover, we cannot see how referring to the defendant insurance company as "this insurance company" or "the insurance company" would affect defendant's substantial rights so as to constitute plain error. Rule 84.13(c); *See Critcher v. Rudy Fick, Inc.*, 315 S.W.2d 421, 427 (Mo.1958).

Other arguments made by counsel were objected to and the objections were sustained. At one point, in response to defendant's objection, counsel agreed to confine his argument to the evidence. Defendant did not request additional relief. Defendant received at trial the relief it requested either from plaintiff's retracting a statement or agreeing to limit his argument or by the court's sustaining an objection. These are not circumstances calling for us to disturb the wide discretion afforded the court in controlling argument. *Parker v. Pine*, 617 S.W.2d 536, 542 (Mo.App. 1981).

## V.

Finally, defendant argues that the case should be reversed and a new trial granted because of the omission of language in the approved damage instruction MAI 4.11. Plaintiff concedes that the phrase, "will fairly and justly compensate plaintiff" was omitted. The jury was instructed to "determine the total amount of plaintiff's damages such sum as you believe he sustained." The omission was error with the prejudicial effect to be determined by this court. Rule 70.02(c).

The error here does not require a reversal. We may properly look to counsel's arguments to determine the prejudicial effect of an erroneous instruction. *Fowler v. Park Corp.*, 673 S.W.2d 749, 756 (Mo.1984) (en banc). Plaintiff's counsel argued in summation that $70,000 would "justly and fairly compensate" the plaintiff. The jury returned a verdict for $60,000 which we have found to be supported by the evidence. The terms "fairly and justly" is qualifying language whose omission here did not mislead the jury thus prejudicing the defendant. The jury was instructed to award the plaintiff such damages as it believed would compensate the plaintiff. The omission of the qualifying terms "fairly and justly" in this case did not change the essential sense of the instruction which was to compensate plaintiff for the damages he sustained. The plaintiff's counsel himself argued that plaintiff should only be fairly and justly compensated, and the amount awarded was supported by the evidence.

For the foregoing reasons, we affirm the judgment of the circuit court.

All concur.