Tammy Deuser ELFRINK,
Plaintiff/Respondent/Cross–Appellant,

v.

BURLINGTON NORTHERN RAILROAD CO., Defendant/Appellant/Cross–Respondent,

and

Charles Arthur Campbell,
Defendant/Cross–Respondent.

Stanley KRUMREY, III, a Minor, by Stanley KRUMREY, Jr. his next friend, Plaintiff/Respondent/Cross–Appellant,

v.

BURLINGTON NORTHERN RAILROAD CO., Defendant/Appellant/Cross–Respondent,

and

Charles Arthur Campbell,
Defendant/Cross–Respondent.

Nos. 60498, 60553, 60503 and 60554.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 8, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Jan. 21, 1993.

Application to Transfer Denied
Feb. 23, 1993.

608

William Allen Brasher, Daniel M. Buescher, William A. Brasher–Law Offices, St. Louis, for appellant.

Alan G. Kimbrell, St. Louis,

Frank Kimberly Carlson, Carlson & Associates, Union,

John D. Beger, Steelman & Beger, Rolla, for respondent.

CRANE, Judge.

This consolidated appeal results from separate actions filed by two automobile passengers against the driver of the automobile and Burlington Northern Railroad

Company for injuries sustained when the automobile collided with a Burlington train at a railroad crossing in Robertsville, Missouri. The cases were consolidated for trial in the circuit court of the City of St. Louis. The jury returned verdicts in favor of the passengers, Tammy Deuser Elfrink and Stanley Krumrey, III, and assessed 90% fault to Burlington and 10% fault to the driver, Charles Campbell. The trial court reduced the judgments to reflect insurance payments to the passengers and reduced Elfrink's judgment against Burlington by the 10% fault apportioned to Campbell. Burlington appeals from those judgments, asserting trial error and excessiveness of the verdict. The two passengers cross appeal, claiming that the trial court erred in reducing their judgments by the amount of the payments they received from their own insurance carriers and in reducing Elfrink's judgment against Burlington by the amount of fault apportioned to Campbell. We find the trial court erred in reducing the judgments by the amount of the insurance payments and reducing Elfrink's judgment by the amount of fault apportioned to Campbell. We modify the judgments by reinstating those amounts and affirm the judgments of the trial court as so modified.

On February 16, 1985, Campbell drove Krumrey, age 15, Elfrink, age 18, and Warren Stephens [1] to a store in Robertsville, Missouri to buy food. After they finished shopping, Campbell started to drive them back to the house. Campbell stopped the car at the railroad crossing just north of the store on Montgomery Road. As the car then crossed the railroad tracks, it was struck by a westbound Burlington train. Although the car did not have a radio and the windows were open, Krumrey testified he never heard a train whistle and was not aware of the train until it was about five feet away. Elfrink also testified that she did not hear a train whistle, bell or horn.

On the other hand, witnesses for Burlington testified that the train had sounded a whistle as it approached the Montgomery Road crossing. Various crewmen stated that the train began sounding its whistle at the whistle board and was still sounding it when the train began braking. Three other witnesses corroborated the train crew's testimony that the train had sounded a whistle.

All four occupants of the car were injured in the crash. Elfrink suffered a broken femur, a permanently displaced pelvis and muscle damage to her legs. These injuries affected her lifestyle and caused her continual pain. Krumrey suffered a collapsed lung, broken ribs, a bruised pancreas, a bruised heart, and a fractured pelvis and also had a kidney removed. He testified that he could no longer play contact sports and was rejected for life insurance coverage. Stephens died from injuries sustained in the crash. Campbell was declared incompetent as a witness as a result of his injuries. The case was submitted to the jury on the theory that Burlington was negligent in failing to sound a whistle or ring a bell within the statutory distances as it approached the crossing and failed to keep the crossing reasonably clear of debris which obscured the crossing.

### BURLINGTON'S APPEAL

For its first point on appeal, Burlington asserts that the trial court erred by refusing to submit to the jury either of Burlington's withdrawal instructions E and F which sought to remove the issues of speed, crossing design and the extra-hazardous nature of the crossing from the case after the passengers had totally abandoned these issues.

Burlington tendered the two withdrawal instructions to the trial court. Instruction E sought to withdraw from jury consideration evidence of the train's speed and the crossing design. Instruction F sought to withdraw from jury consideration evidence of the train's speed, the crossing design and whether the crossing was extra-hazardous. Burlington argues that these issues were abandoned and that it was therefore

---

1. Stephens also filed an action against Campbell which was consolidated for trial with Krumrey's and Elfrink's cases. Stephens' action is not part of this appeal.

entitled to a withdrawal instruction as contemplated by MAI 34.01 [1978 Revision].

■ We agree that these issues were abandoned as a basis for Burlington's negligence because, although they were pleaded, they were not submitted to the jury. *Griffin v. Anderson,* 369 S.W.2d 889, 892 (Mo.App.1963). However, if the evidence offered to support an abandoned issue is sought to be withdrawn from the jury's consideration, "care must be taken that such evidence does not also concern an issue still before the jury." MAI 34.01 [1978 Revision]. The trial court may not withdraw evidence if it concerns an issue still before the jury. *Earll v. Consolidated Alum. Corp.,* 714 S.W.2d 932, 937–38 (Mo.App.1986).

■ In this case, instructions E and F each sought to withdraw the evidence of speed from jury consideration. The case was not submitted to the jury on the ground that the collision was proximately caused by excessive train speed. However, the evidence of train speed was relevant to other issues before the jury. There was undisputed evidence that the train was travelling 49–50 mph. This evidence was used at trial to calculate how long a bell, horn, or whistle would have sounded before the train struck the car if one of those instruments had begun sounding at the statutorily required 80 rods from the crossing. Train speed and automobile speed were also relevant to the driver's ability to keep a lookout and to react if he heard a whistle. Further, train speed was used by Burlington to calculate the train's braking distance and whether the train could have avoided the collision. The trial court did not abuse its discretion in not withdrawing the evidence of train speed from the jury.

■ We need not consider whether the trial court abused its discretion in not withdrawing the evidence of crossing design and the extra-hazardous nature of the crossing from the jury. The instructions submitted to withdraw these issues also withdrew the issue of speed, which still had relevance to the case. It is not an abuse of discretion to refuse a withdrawal instruction that is too broad. *St. Joseph Light &*
*Power Co. v. Ohlhausen,* 621 S.W.2d 301, 303 (Mo.App.1981). Moreover, the verdict directing instructions confined the jury's deliberations to the issues of whether a bell or whistle had been properly sounded or whether the crossing had been properly maintained. The trial court did not abuse its discretion in refusing to give Burlington's proposed withdrawal instructions E and F because the instructions were overbroad. Each instruction attempted to withdraw all evidence of speed from the jury. Point I is denied.

■ For its second point Burlington claims that the trial court erred by submitting the passengers' verdict directing instructions 8, 13 and 21 to the jury. These instructions allowed the jury to find for the passengers if the jury believed that Burlington did not ring its bell or sound its whistle as the train approached and occupied the Montgomery Road crossing. Burlington argues that the passengers failed to present any evidence that Burlington did not ring its bell as it approached the crossing. While Burlington did not specifically object to instructions 8, 13 and 21 at trial, it did specifically object to those instructions in its motion for new trial, thus preserving this issue for our review. Rule 78.07; Rule 70.03.

■ An instruction must be supported by substantial evidence. *Baumgartner v. Bi–State Dev. Agency,* 811 S.W.2d 63, 65 (Mo.App.1991). Where an instruction is disjunctive, all submissions must be supported by substantial evidence. *Berra v. Union Elec. Co.,* 803 S.W.2d 188, 190 (Mo. App.1991). Substantial evidence is that evidence which, if true, is probative of the issues and from which the jury can reasonably decide the case. *Sheridan v. Sunset Pools of St. Louis,* 750 S.W.2d 639, 641 (Mo.App.1988). On review of the submission of an instruction, we must view the evidence and the inferences therefrom in the light most favorable to the instruction, and we disregard any evidence that does not support the instruction. *Berra,* 803 S.W.2d at 190.

A railroad is required to either continually ring a bell or continually sound a whistle or horn on its locomotives within a distance of 80 rods from any place where the tracks intersect a road. § 389.990 RSMo (1986). Burlington concedes that several witnesses testified that they did not hear a whistle, but maintains that no witness specifically testified to not hearing a bell.

The record reveals that two witnesses testified that they did not hear a bell. A bystander witness to the accident testified as follows:

Q. During that entire one or two minutes did you ever hear a horn or a whistle or a bell or anything from a train?

A. No, I did not.

Burlington claims that the question had four parts and it is unclear which part of the question this witness was answering. We disagree. All four parts of the question ask whether the witness heard a sound from the train. The negative reply is evidence that the witness did not hear any sound, including a bell.

The plaintiff Elfrink was also asked if she had heard a bell. She responded, "No." On cross-examination the following exchange took place:

Q. Mrs. Elfrink, with regard to the bell you also vaguely recall hearing the bell or you have no recollection of that?

A. No recollection at all.

Burlington argues that Elfrink's reply on cross-examination indicates a lack of memory and has no probative value, citing *Baker v. Brinker*, 585 S.W.2d 256 (Mo.App.1979). *Baker* does not control. In *Baker* the plaintiff witness testified that she could not remember a number of details of her accident which had occurred seven years before, including whether a horn was sounded. *Id.* at 258. In this case the witness first definitively testified that she had heard no bell. This was sufficient evidence to take the question to the jury. *Bulkley v. Thompson*, 240 Mo.App. 588, 211 S.W.2d 83, 86 (1948). On cross-examination she responded "no recollection" to a question asking her if she heard a bell *or* had no recollection of hearing a bell. Her choice

of the "no recollection" alternative does not invalidate her earlier testimony that she did not actually hear a bell. It was within the province of the jury to conclude that her first response was accurate and her second response was merely a poor choice of words not intended to contradict her earlier answer. *Id.* The weight of Elfrink's testimony on this issue was for the jury. *Lafferty v. Wattle*, 349 S.W.2d 519, 528 (Mo. App.1961).

Burlington also relies on *Brassfield v. Sears*, 421 S.W.2d 321 (Mo.1967), to contend that these witnesses did not affirmatively say that a bell was not ringing, only that they did not hear anything, and that such testimony was evidence of inattention and thus not probative evidence. Burlington's reliance on *Brassfield* is misplaced. In *Brassfield*, the witness admitted that, immediately prior to his accident, his attention was focused on another car, not on the one that he hit. *Id.* at 324. Therefore, examining his testimony as a whole, the court held that the witness's statement that he did not see brake lights on the car he hit was insufficient to support an instruction that no signal was given. *Id.* The court in *Brassfield* did point out that testimony that a witness did not hear or see is probative evidence where it is probable that the witness could or would have heard or seen if the event had happened. *Id.* See also *Black v. Kansas City S. Ry. Co.*, 436 S.W.2d 19, 23 (Mo. banc 1968); *Lafferty*, 349 S.W.2d at 527.

In this case, the bystander witness stated that he heard the rumble of the train and the brakes screeching as the train tried to slow down, but that he did not hear any other sound from the train. The witness's testimony that he heard a rumble but no bell is sufficient to take a case to the jury on the question of whether a whistle or bell was sounded as the train approached the crossing. *Bulkley*, 211 S.W.2d at 86. The verdict directing instructions 8, 13 and 21 were supported by substantial evidence. Point II is denied.

For its third point Burlington contends the trial court erred in requiring Burlington to share its three peremptory

strikes during jury selection with Campbell, claiming he was a plaintiff-in-fact and not a true defendant, thereby denying Burlington its right to a fair and impartial jury. Burlington claims that it was prejudiced in having to share its peremptory challenges with Campbell because their interests were adverse in that Campbell had cross-petitioned against Burlington for personal injuries.

The right of peremptory challenge in civil actions is purely statutory. *Ward v. City Nat'l Bank & Trust Co. of Kansas City*, 379 S.W.2d 614, 617 (Mo.1964). The trial court must follow the statutory provisions allowing peremptory challenges. *Id.; Wilson v. Bob Wood & Assocs.*, 633 S.W.2d 738, 744–45 (Mo.App.1981). Each party in a civil trial is entitled to three peremptory challenges. § 494.480.1 RSMo (Cum.Supp. 1989). However, in civil trials with multiple defendants, each defendant does not have the right to three separate peremptory challenges. Instead, the defendants must share their three peremptory challenges, even if their interests are adverse. *Id.; Ward*, 379 S.W.2d at 617; *Wilson*, 633 S.W.2d at 744–45; *Adair v. N.W. Elec. Power Coop.*, 329 S.W.2d 33, 37 (Mo.App. 1959).

Burlington contends that *Ward* and *Adair* are distinguishable because, in those cases, the co-defendant was not sharing both plaintiff's and defendant's peremptory challenges. In support of this contention, Burlington points to a bench discussion with all attorneys during which the trial judge stated, "I assume you pretty well got [the jurors] picked by now," to which Burlington responded, "Except I have to share my strikes with the person who's suing me to which I object." The court then dismissed the voir dire panel and the jury was selected off the record. While this exchange may demonstrate that Campbell shared defendant's peremptory challenges, there is nothing in the record indicating that Campbell also shared plaintiff's peremptory challenges, or that Burlington objected on those grounds. The trial court

complied with the statutory requirement that defendants share three peremptory challenges. Point III is denied.

For its fourth point Burlington asserts that, due to the passengers' improper closing arguments, the verdicts were the result of passion, prejudice and bias.[2] Burlington contends 1) it was plain error for Stephens' counsel to argue Burlington's fault when Burlington was not a party to Stephens' case against Campbell, 2) it was plain error for counsel representing Krumrey and Deuser to argue damages for cross-claimant Campbell while each had a suit against him, and 3) it was error for Krumrey's counsel to argue that a defense witness had changed his testimony under threat of being fired.

Burlington did not object at trial to either the fault or damage arguments. Accordingly, Burlington asks the court to review these allegations for plain error under Rule 84.13(c).

■■■■ We do not find any basis for invoking the plain error rule in this case. The doctrine of plain error may not be used to cure a mere failure to make a proper and timely objection at trial. *Hensic v. Afshari Enters.*, 599 S.W.2d 522, 525 (Mo.App. 1980). Generally, failure to object to an argument at the time it is made to a jury results in a waiver of any right to complain about the argument on appeal. *Mueller v. Storbakken*, 583 S.W.2d 179, 186 (Mo. banc 1979). This is true even when the point is preserved in a motion for a new trial because, if an objection was not timely made, the trial court had no opportunity to take corrective action. *Glasscock v. Miller*, 720 S.W.2d 771, 777 (Mo.App.1986).

■■■■ Burlington did object to the changed testimony argument. The trial court ordered the jury to disregard that argument. Burlington received all the relief it requested and is not now in a position to complain. *Griffith v. St. Louis–San Francisco Ry. Co.*, 559 S.W.2d 278, 281 (Mo.App.1977). The trial court did not

---

**2.** In both Points IV and V, Burlington originally characterized the error as the trial court's denial of its motion for new trial, but in its reply brief characterized the error as the trial court's entry of judgment.

abuse its wide discretion in controlling closing arguments by failing to give relief that was not requested. *Id.; Stuart v. State Farm Mut. Auto. Ins. Co.,* 699 S.W.2d 450, 457 (Mo.App.1985). Point IV is denied.

For its fifth point Burlington argues that the trial court erred in entering judgment or, in the alternative, denying remittitur because the verdicts returned for passengers Krumrey and Elfrink were excessive and unsupported by the evidence.

■ We first consider the contention that the trial court erred in denying remittitur. We find no error because this procedure was not available to the trial court. In 1985 the Missouri Supreme Court abolished the practice of remittitur in *Firestone v. Crown Center Redev. Corp.,* 693 S.W.2d 99, 110 (Mo. banc 1985). This court has previously determined that the ban on remittitur only applies to cases in which judgment was rendered after *Firestone* was decided. *Jetco Heating & Air Cond. v. Spizman,* 735 S.W.2d 54, 57 (Mo.App.1987). In 1987 our state legislature restored the courts' authority to grant remittitur under certain circumstances in cases in which the cause of action arose after July 1, 1987. §§ 537.068–.069 RSMo (Cum.Supp.1989). In this case the jury returned a verdict and the trial court rendered judgment on March 21, 1991, after the decision in *Firestone.* However, the cause of action arose on February 16, 1985, before the date § 537.068 took effect. Accordingly, remittitur was not available to the trial court.

■ Burlington alternatively asserts the trial court erred in entering judgment for the passengers because the verdict amounts were excessive and not supported by the evidence. A complaint of excessiveness of a jury verdict, standing alone, does not entitle a defendant to appellate relief. The defendant must establish that the excessive verdict was in fact the product of bias and prejudice by showing that the verdict was "glaringly unwarranted" by the evidence and that some trial error or misconduct by the prevailing party was responsible for prejudicing the jury against the defendant. *Koehler v. Burlington N.,* 573 S.W.2d 938, 945 (Mo.App.1978). If the

defendant is able to establish bias and prejudice, the jury is guilty of misconduct which vitiates the entire verdict. *Id.* Under such circumstances a court of appeals can reverse and remand for a new trial. *Id.* However, since Burlington fails to claim any bias or prejudice under this point, its argument does not support appellate relief.

■ A claim that the verdict amount is not supported by the evidence does not entitle a defendant to a new trial because the jury is not guilty of misconduct, but instead has made a simple mistake in weighing the evidence as to the nature and extent of the injury and in awarding disproportionate damages. *Id.* In such cases remittitur is the relief granted to prevent injustice. *Id.* However, as we have held, this case falls within the class of cases in which remittitur is not available. Even if remittitur had been available, however, there would have been no remedy on appeal. An appellate court may not order a reduction of the verdict unless it is so grossly excessive that it shocks the court's conscience and convinces the court that both the jury and the trial judge abused their discretion. *Id.* at 946. We have reviewed the evidence of the injuries and damages and do not find that the verdict was so grossly excessive that we would grant remittitur if it were available. Point V is denied.

## KRUMREY AND ELFRINK CROSS APPEAL

■ For their sole point on cross appeal, Krumrey and Elfrink contend the trial court erred in reducing their judgments by the amount of their settlements with their own insurance carrier because these settlements were payments from collateral sources.

American Family Mutual Insurance Company issued a policy providing uninsured motorist coverage to Krumrey's father and Shelter Mutual Insurance Company issued a policy providing uninsured motorist coverage to Elfrink's stepfather. Krumrey and Elfrink were covered by these respec-

tive policies. Since Campbell was not insured at the time of the accident, both companies settled on their policies: American Family paid $150,000 to Krumrey and Shelter paid $23,000 to Elfrink. The trial court reduced the judgments by these amounts, stating that the releases reflected that they were entered in accordance with § 537.060 RSMo (1986). This statute governs contribution between joint tort-feasors. While this statute may have some bearing on other aspects of the releases, it does not and cannot reduce Burlington's liability by the collateral payments received by Krumrey and Elfrink under a policy of insurance for which Krumrey's father and Elfrink's stepfather paid a premium. *Kaelin v. Nuelle*, 537 S.W.2d 226, 237 (Mo.App. 1976). The right of the injured party to recover from an uninsured motorist carrier arises from the insurance contract, rather than in tort. *Auto. Club Inter–Ins. Exchange v. Farmers Ins. Co.*, 646 S.W.2d 838, 840 (Mo.App.1982). Thus, the trial court erred in reducing the judgments of Krumrey and Elfrink by the settlement amounts.

■■■ Krumrey and Elfrink also argue under this point that the trial court further erred in reducing Elfrink's judgment against Burlington by 10%, the apportioned amount of Campbell's fault. Burlington responded to this argument in its brief. However, this allegation of error was not included in Krumrey and Elfrink's point in their opening brief, but was added to their point in their reply brief as follows:

and in reducing Tammy Deuser Elfrink's judgement against appellant Burlington Northern Railroad Company by the amount of respondent Charlie Campbell's fault.

An assignment of error made for the first time in a reply brief does not properly preserve that issue for review. *Stewart v. Sturms*, 784 S.W.2d 257, 260 (Mo.App. banc 1989). Accordingly, Krumrey and Elfrink did not properly preserve for review the alleged error in reducing their verdicts against Burlington by Campbell's 10% fault.

Nevertheless, Rule 84.13(c) provides:

Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

We will exercise our discretion to review this question for plain error. *See Audsley v. Allen*, 774 S.W.2d 142, 146 (Mo. banc 1989).

■■■ Defendants in a tort action are jointly and severally liable for the judgment amount. *Berry v. Kansas City Pub. Serv. Co.*, 343 Mo. 474, 121 S.W.2d 825, 833 (1938). Apportionment of relative fault between defendants has no effect on a plaintiff's right to collect the full amount from any one of the defendants. *Missouri Pac. R.R. Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466, 474 (Mo. banc 1978). Thus, Burlington and Campbell are each liable for the entire judgment amount. If one defendant is required to pay more than its proportionate share, it may seek contribution from the other defendants up to the amount representing their respective percentages of fault. § 537.060 RSMo (1986); *Bell v. United Parcel Servs.*, 724 S.W.2d 682, 684 n. 3 (Mo.App.1987). The judgment in favor of Elfrink results in a miscarriage of justice because it deprives her of her right to collect the full amount from either defendant. The trial court plainly erred in reducing the amount of Elfrink's judgment against Burlington by the amount of Campbell's relative fault.

■■■ In examining the judgment we also note that, although the trial court recited that the jury verdict in favor of Krumrey was $850,000 and made a finding that the amount should be reduced by $150,000, in the "Order" portion of the judgment, the trial court did not enter a judgment in favor of Krumrey, but did enter a judgment in favor of the other plaintiffs. Since any inconsistency between the order and recital portions of a judgment is resolved in favor of the order portion, *Casper v. Lee*, 362 Mo. 927, 245 S.W.2d 132, 141 (1952) (en banc), this omission may deprive Krumrey of his right to have the judgment entered by the court conform to the verdict. We exercise our discretion under the plain error rule to correct this omission. *Bourke*

**616**

*v. Foster,* 343 S.W.2d 208, 210–11 (Mo.App. 1960).

The "Judgment After Trial by Jury" executed by the trial court is accordingly modified as follows: 1) Finding 3, on pages 4–5 of the judgment, relating to Krumrey's receipt of $150,000 from American Family Insurance Company should be deleted in whole; 2) Finding 4, on page 5 of the judgment, relating to Elfrink's receipt of $23,000 from Shelter Insurance Company should be deleted in whole; and 3) Paragraph 1 of the order on page 5 of the judgment is modified to read as follows:

1.   a) That judgment be entered in favor of Plaintiff Tammy Deuser Elfrink and against Defendant Burlington Northern Railroad and Defendant Charles Arthur Campbell in the amount of $700,000 as and for actual damages. b) That judgment be entered in favor of Plaintiff Stanley Krumrey, III and against Defendant Burlington Northern Railroad and Defendant Charles Arthur Campbell in the amount of $850,000 as and for actual damages.

As so modified the judgment is affirmed.

CARL R. GAERTNER, P.J., and SIMON, J., concur.